UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**EMILY FULLER**,

      Plaintiff,

vs.

**AMERICAN HONDA MOTOR CO. INC.**,
a foreign for-profit corporation,

      Defendant.

                                     /

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff EMILY FULLER, through undersigned counsel, sues Defendant AMERICAN HONDA MOTOR CO INC., a foreign for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.   This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Defendant's merchandise online.   This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (her personal computer), and for compensatory damages to Plaintiff for such trespass.   Remedies provided under common law for trespass are not exclusive, and may be sought in connection with suits brought under the ADA.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.   Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff EMILY FULLER is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times is visually disabled and suffers from alternating estropia; myopia, bilateral; and regular astigmatism, bilateral, a permanent eye disease and medical condition that substantially and significantly impairs her vision.   Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing her world and adequately traversing obstacles.  As such, she is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. 3602, §802(h).

6.      As a result of her being visually impaired and disabled, Plaintiff cannot use the computer without the assistance of appropriate and available screen reader software.

7.      Defendant AMERICAN HONDA MOTOR CO INC. is a foreign for-profit corporation authorized to do business and doing business in the State of Florida that is in the business of manufacture and sales of automotive vehicles and automotive parts and accessories to the public.   Defendant owns and/or operates numerous Honda automotive dealerships throughout the United States, including the State of Florida.

8.      Plaintiff's vision disability limits her in the performance of major life activities, including sight, and she requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with her use of a computer.

9.      Plaintiff frequently utilizes the internet.  Due to the fact that she is significantly and permanently visually impaired, in order to effectively communicate and comprehend information available on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.      At all times material hereto, Defendant was and still is an organization which owns and operates a nationwide chain of retail stores under the brand name "Honda."  Each store is open to the public.  As the owner and operator of these dealerships, Defendant is defined as a "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.      By virtue of being a retail store open to the public, each of Defendant's stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.      Defendant controls, maintains, and/or operates an adjunct website called http://shop.honda.com.  One of the functions of Defendant's website is to provide the public information on the various locations of Defendant's dealerships that sell automobiles and parts throughout the United States and within the State of Florida.  Defendant also sells to the public its merchandise and goods through its associated website.

13.     Defendant's associated website also services its stores by providing information on its brands of merchandise, tips and advice, editorials, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers.

14.     Since the website allows the public the ability to locate its dealership locations, and sells merchandise offered for sale by Defendant and delivered from or offered to be picked up at its dealerships and physical locations, the website is an extension of Defendant's physical stores.  By this nexus, the website is characterized as a place of public accommodation per 42 U.S.C. § 12181(7)(E), and an extension of Defendant's brick and mortar locations and businesses.

15.     Because Defendant's website is a public store that is on-line, where the public can view and purchase Defendant's merchandise, the website is itself a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website must comply with all requirements of the ADA, and must not discriminate against individuals with disabilities and must not deny full and equal enjoyment of the services afforded to the public.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the above-described website, http://shop.honda.com.  Since the website is open through the internet to the public as a retail store and is a place of public accommodation under the ADA, Defendant, as the owner and/or operator of the website, is defined as a "public accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in purchasing Defendant's merchandise, which is offered at Defendant's physical stores and which is also offered and sold through Defendant's website.

18.     The opportunity to shop for Defendant's brand of merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually impaired individual is often a difficult, hazardous, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals.

19.     Like most consumers, Plaintiff accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff may look at several dozens of websites to compare features and prices.

20.     During the month of May 2017, Plaintiff attempted on several occasions to utilize Defendant's website to browse through the merchandise to educate herself as to the merchandise being offered and with the intent of making a purchase through the website.

21.     Plaintiff utilizes Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).  However, Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: empty links, empty buttons and missing alt text on site images.

22.     Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the website.

23.     Plaintiff attempted to locate an "Accessibility Notice" on Defendant's website which would direct her to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business.  However, Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

24.     The fact that Plaintiff could not communicate with or within Defendant's website left her feeling excluded, as she is unable to participate in the same online shopping experience and access to merchandise as provided at the website and as experienced by the non-visually impaired public.

25.     Plaintiff continues to desire to patronize Defendant's website, but is unable to do so as she is unable to effectively communicate with Defendant due to her severe vision impairment.  Thus, Plaintiff, as well as others with vision impairments and disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and its website, and the fact that the website clearly requires input from Defendant's retail stores for its operation and use, the website is a place of public accommodation subject to requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually impaired.

36.     On information and belief, Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the http://shop.honda.com website, applications, and digital assets accessible to the visually impaired community.

37.     On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility.

38.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its website to visually impaired

individuals who want the safety and privacy of purchasing Defendant's merchandise offered on its website online from their homes.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet shopping websites, such as the http://shop.honda.com website.

42.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

43.     On information and belief, Defendant is aware of the need to provide full access to all visitors to its website.

44.     The barriers that exist on Defendant's website result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.  Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes her personal computer to access websites such as the Defendant's http://shop.honda.com website. Plaintiff uses her personal computer as a method of conveyance of her personal information.  Plaintiff thus stores her personal information and retains her browsing history on her personal computer.

49.     Throughout its website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits. Specifically, Defendant informs the website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his or her personal information conveyed to third parties.  According to Defendant's website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies); (ii) service providers (without so naming the service providers); (iii) other third parties (without so naming the third parties); (iv) law enforcement officials (if so required to be transmitted by said law enforcement); and (v) to other third-party ad servers.

50.     Because of her severe visual impairment, Plaintiff was unable to comprehend Defendant's website; therefore, Plaintiff has had no choice, and likewise no knowledge, of

Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's computer.

51.     Based upon the review of Defendant's website, when a user accesses Defendant's website, Defendant installs software onto the user's computer, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

52.     As such, through its website, Defendant has committed a trespass against the Plaintiff, since the website places software on the Plaintiff's personal computer without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

53.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

54.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the http://shop.honda.com website, as defined within §12181(7)(E), and is subject to the ADA.

55.     Pursuant to 42 U.S.C. §12181(7)(E), http://shop.honda.com is a place of public accommodation under the ADA because it provides the general public with the ability to purchase Defendant's merchandise online, and have those purchased items delivered to one's home or picked up from one of Defendant's retail stores.  Further, the website also serves to augment Defendant's stores by providing the public information on the various locations of the stores and to educate the public as to Defendant's available merchandise sold on the website and sold in its stores.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.     Defendant's website must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

60.     As a result of the inaccessibility of Defendant's website, individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

61.     A sample review of just part of the Defendant's website reveals that the website is not functional for users who are visually impaired, including, but not limited to, the following:

a) Empty links;

b) Empty buttons; and

c) Missing alt text on site images.

*See*, Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

62.     More violations may be present on other pages of the website, which can and will be determined and proven through the discovery process in this case.

63.     Further, Defendant's website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the website's accessibility information and accessibility facts.

64.     There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.   Incorporating such basic components to make the website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to its website by individuals, such as Plaintiff, with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within Defendant's website are ongoing.

66.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.     As alleged hereinabove, Defendant's website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71.     As a direct and proximate result of Defendant's failure to provide an ADA compliant website, with a nexus to its brick and mortar stores and physical locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's website.

72.     As a result of the inadequate development and administration of the http://shop.honda.com website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)   Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the http://shop.honda.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website.

b)  Require Defendant to take the necessary steps to make the website readily accessible to and usable by visually impaired users, and during that time period prior to the http://shop.honda.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the website for purposes of viewing and locating Defendant's stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's website.

74.     Plaintiff is entitled to recover her reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel

for the filing and prosecution of this action, and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant to update its http://shop.honda.com website to remove barriers in order that individuals with visual disabilities can access the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant to clearly display the universal disabled logo within its website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the http://shop.honda.com website;

D. An order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E. An Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

---



F.  An Order directing Defendant to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually impaired;

G.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

H.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.  Plaintiff re-alleges paragraphs 1 through 52 as if set forth fully herein.

76.  Plaintiff's tangible personal property, being her computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's website, due to Defendant's employment of software analytics which are present on and through Defendant's website, which the Plaintiff has navigated.

77.  At all relevant times, Plaintiff did not consent to and was unaware that Defendant's website was placing software on her computer due to her inability to effectively communicate with and fully view and access the website.

78.  Plaintiff did not consent to the placement of tracking and information securing software on her personal computer; therefore, Defendant has committed a trespass against Plaintiff by placing such software on her computer without her knowledge or consent.

79.  By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

80.    Defendant's installation, operation, and execution of software on Plaintiff's computer has directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

81.    At the Defendant's website location, as part of its "Privacy Notice", Defendant states the following:

### Information We Collect Automatically

#### Device and Usage Information

We receive information from the devices (computer, tablet, smartphone, etc.) you use to connect to our Sites. The information we receive from these devices may include IP address, unique device identifiers, browser type, internet service provider, hardware model, operating system and application version. When you use or interact with our Sites, we may also record certain information and store it in log files. This may include referring and exit pages, time and date stamp, search terms and clickstream data.

#### Location Information

We receive location information from the devices you use to connect to our Sites. Location information may be obtained through the use of geolocation features in your devices or through other methods such as using your IP address to identify your general geographic area.

#### Cookies, Web Beacons and Similar Technologies

We may receive and store certain information about your browsing preferences or activities by using cookies, web beacons and similar technologies. These technologies may be provided by third parties such as ClearTrust, BrowserHawk, Capricorn Encryption, WebTrends and others. Cookies are small text files placed on your computer to help websites and applications recognize your browser. They help us provide you with customized services and may be used for interest-based advertisements or to associate you with social media sites. We may use both session cookies (disappear after you close your browser) and persistent cookies (remain after you close your browser and may be accessed every time you use or connect to our Sites). Most web browsers allow you to modify your cookie settings; however, certain features of our Sites may not work properly if you disable cookies. Web beacons are transparent graphic pixels that are placed on web pages that enable us or a third party to track your actions on our Sites and deliver interest-based advertisements. More information regarding online tracking and interested-based advertising, including opt-out options is included below.

<u>Social Media Widgets</u>

Our sites and mobile applications include social media features connected with social media platform such as Facebook, Twitter, Instagram, Snapchat, Google Plus, Pinterest, YouTube and others. These features may collect information about your IP address and which page you're visiting on our site, and they may set a cookie or employ other tracking technologies. Social media features and widgets are either hosted by a third party or hosted directly on our site. Your interactions with those features are governed by the privacy policies of the companies that provide them.

Use of Information by American Honda

Except as otherwise limited in the Policy, we may use personal and anonymous information collected from the Sites in several ways, including:

To facilitate or fulfill the information, products or services you have requested;
To provide educational materials to you;
To provide important safety or warranty related information;
To maintain customer relationships;
To communicate with you about your account;
For future marketing promotions, including advertisements tailored to your interests; and
For internal business operations, including the improvement of our products/services, data analytics, to personalize your experience and other normal business activities.

Information obtained through our Sites may be merged with other information American Honda already knows, such as whether you are an owner of a Honda or Acura product.

Sharing of Information with Third Parties

Except as otherwise limited in the Policy, we may share personal and anonymous information collected from the Sites as outlined in this section.

Affiliated Entities

We may share the information we collect with our parent company, subsidiaries and affiliates. These entities may use this information for everyday business purposes, including the purposes for which American Honda uses the information (outlined above).

Service Providers

We may share the information we collect with third parties that perform services on behalf of American Honda. Service providers may include companies that provide fulfillment, IT, marketing, survey, data analytic, data hygiene or other services on behalf American Honda. These companies may need information about you in order to perform their functions.

Dealers

We may share your personal information with authorized Honda and Acura dealers, which are independently owned and operated. Dealers may use this information for their everyday business purposes, including marketing, customer service, fulfillment and related purposes.

## Partners

When you visit or use a part of any Site that is co-branded or that is a part of a joint promotion involving American Honda and one or more third parties (each a "Co-Branded Party"), you are providing and consenting to provide your personal information and any other information collected by any Co-Branded Party to American Honda and each of the Co-Branded Parties without any other notice or further consent. We do not control Co-Branded Parties' use or treatment of information you provide to them and you should consult each of their privacy policies or any separate Co-Branded privacy policy posted on or linked from the Co-Branded site to determine your rights with respect to their use and treatment of your information.

## Sensitive Information

Sensitive information (social security numbers, payment information and geolocation information) obtained via the Sites is shared only pursuant to your consent or to the extent necessary to process your transactions or fulfill your requests.

## As Required by Law or Requested by Law Enforcement

We may share your personal information in response to a subpoena, civil investigative demand or request from a law enforcement agency, or to otherwise comply with applicable laws.

## Changes in Corporate Structure or Bankruptcy

In the event that American Honda is involved in a bankruptcy, merger, acquisition, reorganization or sale of assets, your information may be sold or transferred as part of that transaction. We also may retain a copy of such information.

## Other Nonaffiliated Third Parties

We will not knowingly share your personal information with any other nonaffiliated third party, for such party's own marketing purposes, without your consent. One example of such sharing is when . you request to be added to the fan mailing list of one of the participating Civic Tour bands and/or a Civic Tour promotional partner.

## Online Tracking and Interest-Based Advertisements

AHM and third parties, which may include Google, Adobe, Facebook and others advertising networks, use cookies, web beacons and similar technologies to gather information about you over time and across different websites or applications in order to help predict your preferences and show you interest-based advertisements.

## How You Can Opt-Out

If you do not wish to receive interest-based advertising, please visit the [Digital Advertising Alliance (DAA) Consumer Choice Page](). The DAA website allows you to opt-out of one or more interest-based advertising networks. Opt-outs are device and browser specific; therefore, you will need to set your opt-out preferences for each device and browser. Deleting browser cookies can remove your opt-out preferences; however, the DAA offers [browser extensions]() that help preserve the opt-out preferences you set on the DAA's Consumer Choice Page. Please note that opt-outs only apply to interest-based advertising. You may still receive other types of online advertising.

**Browser Do Not Track Signals**
Some browsers have a "do not track" setting that allows you to tell sites that you do not want to be tracked. At this time, our Sites do not treat browsers that send a "do not track" signal differently from browsers that do not send one. You may, however, opt-out of interest-based advertising as outlined above.

82.　　Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff as follows:

a)　By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)　By infringing on Plaintiff's right to exclude others from her computer;

c)　By infringing on Plaintiff's right to determine, as the owner of her computer, which programs should be installed and operated on her computer;

d)　By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)　By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on her computer without notice or consent.

83.　　Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  August 28, 2017.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

By____*s/ Roderick V. Hannah*_____
       RODERICK V. HANNAH
       Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com

By ___*s/ Pelayo M. Duran*_____
       PELAYO M. DURAN
       Fla. Bar No. 0146595